**In re Tommy LOCK, Denise Lock.**

**Bankruptcy No. 98–14555.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 30, 1999.

John A. Schuh, Schuh & Goldberg, Cincinnati, OH, for Oak Hills Bank.

G. Timothy Dearfield, Cincinnati, OH, for debtors.

## ORDER RE: OAK HILLS BANK'S MOTION FOR SANCTIONS

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on Oak Hills Bank's Motion for Sanctions (Doc. 13), the Debtors' Memorandum in Opposition (Doc. 16), Oak Hills' Supplemental Memorandum (Doc. 25), and the parties'

Post–Hearing Memoranda (Docs. 27, 29). A hearing was held on February 23, 1999.

The issue before the Court is whether a debtor who is current on his payments may retain collateral without either redeeming the property or reaffirming the debt. At stake, of course, is the creditor's right to obtain a judgment against the debtor for a deficiency balance in the event of a possible future default by the debtor.

The Debtors filed their chapter 7 petition on July 24, 1998. Oak Hills is a secured creditor with a lien on the Debtors' vehicle and a first and second mortgage on the Debtors' residence. In their statement of intention filed with their petition, the Debtors indicated their intent to reaffirm the three debts to Oak Hills. Several days after the petition filing date, the Debtor wife became extremely ill as a result of a rare blood clotting disorder which left her comatose for seven weeks and resulted in numerous hospital visits.

On November 2, 1998, an agreed order was entered extending the deadline for filing reaffirmation agreements with regard to both mortgages and the car loan. On November 30, 1998, a reaffirmation agreement was entered with regard to the vehicle. At some point in time, as a result of the post-petition change in the Debtor wife's health, the Debtors' attorney concluded that he could not execute the attorney's declaration to effect a reaffirmation on the first and second mortgages as required under 11 U.S.C. § 524(c).

The Debtors are current on their payments to Oak Hills. The payoff on the first mortgage is $52,180.19. The payoff on the second mortgage is $10,302.21. The Debtors valued the residence at $70,000.00 in their Schedule A and at $75,000.00 in their Schedule D.

Central to the resolution of this issue is 11 U.S.C. § 521 which states as follows:

The debtor shall—

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts secured by property of the estate—

(A) within thirty days of the filing of the petition under chapter 7 of this title ... file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of the notice of intent under this section ... the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

The issue before this Court has been addressed by eight circuit courts, four of which have held that a debtor who wishes to retain collateral must either redeem the property or reaffirm the debt. *In re Burr*, 160 F.3d 843 (1st Cir.1998); *In re Johnson*, 89 F.3d 249 (5th Cir.1996); *In re Taylor*, 3 F.3d 1512 (11th Cir.1993); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). *See also In re Boodrow*, 126 F.3d 43 (2d Cir.1997) (dissent). Four other circuit courts have held exactly the opposite, adopting the view that a debtor may retain the collateral and maintain the payments, the so-called "retain and maintain" or "fourth option".[1] *In re Parker*, 139 F.3d 668 (9th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *In re Boodrow*, 126 F.3d 43 (2d Cir.1997), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *In re Belanger*, 962 F.2d 345 (4th Cir.1992); *In re Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989).

---

**1.** The four options are surrender, redeem, reaffirm, or retain and maintain.

The split in the caselaw is reflected even in Official Form 8, which was amended in 1997 to "make clear that the form is not intended to take a position regarding whether the options on the form are the only choices available to the debtor." Advisory Committee Note to 1997 Amendment. Similarly, Local Bankruptcy Rule 1007–3, which previously allowed for the creditor to file a motion for sanctions for the debtor's failure to comply with § 521(2) was deleted in 1999 to reflect the unsettled nature of the caselaw on this issue.

█ For the reasons stated below, we follow those decisions which have held that a debtor who wishes to retain collateral must either redeem the property or reaffirm the debt.

The plain language of § 521(2)(A) requires a debtor to elect one of the two retention options. *See In re Burr*, 160 F.3d at 849; *In re Boodrow*, 126 F.3d at 57 (dissent); *In re Taylor*, 3 F.3d at 1517; *In re Edwards*, 901 F.2d at 1385. Even one of the "retain and maintain" circuit decisions concedes that "[i]f the debtor decides to retain, the debtor is required to elect whether to redeem or reaffirm." *Lowry Federal Credit Union*, 882 F.2d at 1545, n. 2. We naturally read the phrase "if applicable" to refer to the situation where a debtor chooses to retain the collateral. If a debtor chooses to surrender the collateral, then neither redemption or reaffirmation is applicable. *See In re Burr*, 160 F.3d at 846; *In re Taylor*, 3 F.3d at 1516.

This interpretation of § 521(2)(A) is bolstered by § 521(2)(B) which states that the debtor shall perform his intention within 45 days after the filing of the notice of intention. The "retain and maintain" option is not capable of being performed within 45 days. *See In re Burr*, 160 F.3d at 847; *In re Taylor*, 3 F.3d at 1516.

Nor do we have any difficulty reconciling § 521(2)(C) with the above interpretation. Section 521(2)(C) states only that other rights under title 11 bestowed upon the debtor and the trustee are not altered by § 521(2)(A) or (B). *See In re Burr*, 160 F.3d at 848.

This holding is also strongly supported by the Sixth Circuit's decision in *In re Bell*, 700 F.2d 1053 (6th Cir.1983). In *In re Bell*, the Sixth Circuit held that redemption could not be achieved via installment payments. Important to the Sixth Circuit's decision was its reasoning that the Code allows for either redemption or reaffirmation and not some other option not defined in the Code. *See* 700 F.2d at 1056–57.

█ Contrary to the Debtors' contention, we believe that *In re Laubacher*, 150 B.R. 200 (Bankr.N.D.Ohio 1992) improperly interpreted *In re Bell*. The court in *In re Laubacher* adopted the "retain and maintain" option because the involved property was *real* property. However, just because a debtor may not redeem real property under § 722 does not mean that § 521 may be ignored. While § 521 is expressly limited to consumer debts, it is not limited to debts secured by personal property.[2] Indeed, as Oak Hills points out, § 521's now infamous "if applicable" phrase renders reaffirmation viable even when redemption is not. In any event, *In re Laubacher* is not binding on this Court.

Although we find that the plain language of § 521(2) supports our holding, in view of the number of courts that have held differently, we find it appropriate to discuss the several policies which also support our holding.

If a debtor were allowed to "retain and maintain", reaffirmations would be rendered useless. *In re Burr*, 160 F.3d at 847; *In re Taylor*, 3 F.3d. at 1515–16. Indeed, this is the absurd conclusion

---

**2.** The parties have not raised and we do not address the issue of whether or not a consumer debt under § 521(2) includes a debt secured by real property. As did the Court in *In re Laubacher,* we simply assume that it may. *See* 150 B.R. at 201. The parties have stipulated that the debts are consumer debts. (*See* Doc. 27).

reached by at least one bankruptcy court. *See In re Parker,* 139 F.3d at 672 (discussing bankruptcy court's holding that since debtor could keep vehicle without reaffirming, reaffirmation was not in best interest of debtor). It certainly cannot have been the legislative intent for § 521(2)(A) to so surreptitiously abrogate § 524(c). Nor does the fact that some creditors may voluntarily agree to the "retain and maintain" option provide a basis for this Court's approval of such an arrangement.

Permitting a debtor to retain property with no reaffirmation of personal liability allows the debtor to force a new credit arrangement on the creditor. *In re Edwards,* 901 F.2d at 1386. Under this new credit arrangement, the debtor has less incentive to insure or maintain the collateral and while the debtor is provided all the benefits, the creditor is afforded all the risks. *Id.* Thus, the "retain and maintain" option creates a substantive right for the debtor not otherwise defined in the Code. Had Congress intended to empower a debtor so, it is likely that Congress would had given this new credit arrangement a name. *See In re Burr,* 160 F.3d at 847; *In re Boodrow,* 126 F.3d at 60 (dissent). Further, this type of nonrecourse lending arrangement is not typically available to the general consumer outside of bankruptcy. Also, we agree, somewhat ironically, with the "retain and maintain" courts' position that § 521(2) is merely procedural, *see In re Belanger,* 962 F.2d at 347, in that a procedural Code section should not create a substantive right.

Limiting a debtor to surrender, redemption or reaffirmation does not deprive the debtor of his fresh start. If the subject property is worth keeping, i.e., the debtor has equity in the property, then the debtor should consider reaffirmation and whether or not the equity cushion might protect him from a deficiency balance in the event of a future default. On the other hand, if the property has little value, the debtor may be able to renegotiate a reaffirmation agreement on terms beneficial to the debt-

or. *In re Edwards,* 901 F.2d at 1386, n. 9. Also, the debtor with regular income who wishes to retain collateral may have the option of filing a petition under chapter 13 which expressly provides for a cram-down over the objection of the secured creditor. *In re Burr,* 160 F.3d at 847, 848.

Finally, if the debtor and creditor are to have a post-discharge relationship, as they must if the debtor is going to maintain his payments, some form of communication will be necessary between the parties, both from the debtor to the creditor and from the creditor to the debtor. But what types of communication are allowed in view of the discharge injunction of § 524? In the present case, the second mortgage is a variable rate loan. Would Oak Hills' notice to the Debtors of an increase in the interest rate violate the discharge injunction? Can Oak Hills notify the Debtors of changes in escrow amounts for taxes and insurance? Can Oak Hills send a default notice to the Debtors if they do miss a payment? The confusing status that results from such an undefined relationship is not beneficial to either the debtor or the creditor and would undoubtedly result in litigation.

The Debtors contend that their situation "evolved" into an undue hardship case and prevented them from reaffirming the debts in the statutory forty-five day period. This contention has no merit. There is no hardship exception to § 521(2). However, if the Debtors' circumstances changed such that their originally contemplated reaffirmation would presently impose an undue hardship, *see* § 524(c)(3)(B), then the Debtors should have modified their statement of intention at their first practical opportunity to do so. Indeed, the mechanism of reaffirmation is designed to handle a change in a debtor's circumstances even after reaffirmation, as evidenced by the debtor's statutory right to rescind a reaffirmation agreement for a certain period of time. But just because a particular debtor cannot reaffirm for reasons of undue hardship does not mean that

that particular debtor should get a "fourth" option. Furthermore, signed reaffirmation agreement or not, it would be incongruous for this Court to allow these Debtors to maintain payments on a debt when payment of the debt creates an undue hardship for the Debtors.

The Debtors also contend that they were unable to perform their stated intention to reaffirm because of the Debtor wife's medical condition. The Debtors also contend that the Debtor wife's medical condition prevented her from amending her statement of intention. Although we do not discount the seriousness of the Debtor wife's medical condition and the concomitant difficulty this has created for the Debtor husband, we find that the record does not support a defense of impossibility. The Debtors' decision to "retain and maintain" was a deliberate decision, made upon the advice of counsel, because of the Debtors' uncertain economic future. We also note that the Debtors did timely reaffirm their obligation to Oak Hills with regard to the vehicle.

■ Oak Hills' motion is couched as a request for sanctions in the amount of $350.00 for attorneys fees incurred by Oak Hills as a result of the Debtors' failure to abide by their statement of intention.[3] At the hearing, Oak Hills amended its request for a nominal amount of $10.00. The Debtors contend that § 521 does not provide for sanctions in the event of debtor noncompliance. In any event, we find that the action (or inaction) taken by the Debtors in the present case does not arise to the level of sanctionable conduct justifying a monetary fine, even a nominal one.

We believe, however, that Oak Hills' filing of a motion for sanctions points out the lack of alternatives available to the secured creditor when the debtor attempts to assert the "retain and maintain" option: when the debtor is current with his pay-ments, it is questionable whether the secured creditor is justified in filing a motion to lift the stay. *See In re Boodrow*, 126 F.3d at 55 (dissent) (discussing *In re Weir*, 173 B.R. 682 (Bankr.E.D.Cal.1994)). Nor does the creditor, at least in this case, really want sanctions. Rather, Oak Hills wants to know what its future relationship with the Debtors will be. Other courts have held that a judgment of nondischargeability is inappropriate, *see In re Logan*, 124 B.R. 729, 734 (Bankr.S.D.Ohio 1991) (Cole, J.), and Oak Hills has not requested such a remedy.

■ In conclusion, we find that the should the Debtors intend to retain the subject property, they must reaffirm[4] their mortgages with Oak Hills. The Debtors shall have ten (10) days from the entry date of this Order in which to fulfill their intention. Should the Debtors fail to reaffirm their obligations within said time period, Oak Hills may tender to the Court an order lifting the stay. *See In re Weir*, 173 B.R. 682 (stay lifted where debtor failed to comply with § 521(2)); *In re Logan*, 124 B.R. 729 (stay lifted where debtor failed to comply with § 521(2)). Oak Hills will then be free to proceed with any rights and remedies it may have under state law.

IT IS SO ORDERED.

---

3. The various steps taken by Oak Hills' attorney to obtain signed reaffirmation agreements are outlined in Oak Hills' motion. (*See* Doc. 13).

4. As stated earlier, redemption of real property is not available under § 722.