In re Michael B. PRICE and Christine R. Price, Debtors.

No. 01–11587 PJW.

United States Bankruptcy Court, D. Delaware.

June 25, 2002.

W.J. Winterstein, Jr., William M. Aukamp, Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd., Philadelphia, PA, for Delaware State Police Federal Credit Union.

Andrea G. Green, Doroshow, Pasquale, Krawitz, Siegel & Bhaya, Dover, DE, for Michael B. Price, Christine R. Price.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

Before the court is the motion (Doc. # 4) of the Delaware State Police Federal Credit Union ("DSP") to compel Michael B. Price and Christine R. Price (collectively "Debtors") to surrender or redeem certain collateral, or to reaffirm their secured debt owing to DSP. I will grant the motion for the reasons discussed below.

## BACKGROUND

On June 14, 1999, Debtors executed and delivered a note ("Note") and security agreement ("Security Agreement") to DSP, evidencing Debtors' indebtedness in the original principal amount of $9,271.00, and granting DSP a first lien in one 1995 Toyota Corolla, VIN 2TIAEO4B1SCO88776. (DSP Mot. (Doc. # 4) ¶ 2.) Approximately two years later, on June 6, 2001, Debtors executed a second note (collectively with "Note," "Notes") and security agreement (collectively with Security Agreement and Notes, "Loan Documents") to DSP, evidencing Debtors' indebtedness in the original principal amount of $21,985.29, and granting DSP a first lien against one Toyota Sienna, VIN 4T3ZF19C21U402961 ("Sienna" and, collectively with the Corolla, "Vehicles"). (Id. at ¶ 3.)

On December 11, 2001 ("Petition Date"), Debtors filed a voluntary joint petition for relief under chapter 7 of the Bankruptcy Code ("Code"). (Debtor's Mem. (Doc. # 15) at 1.) At that time, Debtors also filed

their statement of intention, pursuant to 11 U.S.C. § 521[1], which states, with respect to the Vehicles, that "Debtor will retain [the] collateral and continue to make regular payments" thereon. (DSP Mot. (Doc. # 4) Ex. A.) Thereafter, on February 21, 2002, DSP filed its motion (Doc. # 4) to compel Debtors to elect to surrender the Vehicles to DSP ("Surrender"), redeem the Vehicles pursuant to 11 U.S.C. § 722[2] ("Redeem"), or reaffirm the secured debt owing to DSP ("Reaffirm"). DSP asserts that these three options are Debtors' only options under 11 U.S.C. § 521(2). (DSP Mem. (Doc. # 16) at 7.) Debtors disagree and argue that they have the additional option ("Fourth Option") of retaining the Vehicles without Redeeming or Reaffirming, provided that they continue to make regular payments in accordance with the Loan Documents. (Debtors' Mem. (Doc. # 15) at 1–2.) The only issue in this case is whether the Fourth Option is allowed under 11 U.S.C. § 521(2).[3] A general discharge was entered in favor of Debtors on April 22, 2002. (DSP Mem. (Doc. # 16) at 4.)

## DISCUSSION

Section 521(2)(A) provides that upon filing a chapter 7 petition, a debtor with consumer debts secured by property of the estate must file "a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property". 11 U.S.C. § 521(2)(A) (2001–02). Section 521(2)(B) provides that once the debtor states his intention with respect to a particular piece of property, he must perform the stated intention with forty-five days. *Id.* at § 521(2)(B).[4] Section 521(2)(C) further provides that "nothing in [§ 521(2)(A) and (B)] shall alter the debtor's or the trustee's rights with regard to such property under this title." *Id.* at § 521(C). The courts disagree as to whether these provisions enable a debtor who wishes to retain collateral securing a consumer debt to do so without redeeming the collateral or reaffirming the debt secured thereby, provided that he continues

1. 11 U.S.C. § 521 provides in pertinent part:

The debtor shall—
(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs;
(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem

such property, or that the debtor intends to reaffirm debts secured by such property;

2. Section 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

3. 11 U.S.C. §§ 101 *et seq.* is hereinafter referred to as "§ __".

4. The Court may extend this forty-five day time period for cause. 11 U.S.C. § 521(2)(B).

to make regular payments thereon. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 849 (1st Cir.1998) (holding that § 521(2) unambiguously requires chapter 7 debtors wishing to retain property securing consumer debt to elect one of the retention options specified in § 521(2)(A) and then to perform the elected option within the period specified in § 521(2)(B)); *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 673 (9th Cir.1998) (holding that debtor was not limited to the retention options listed in § 521(2)(A) and therefore, debtor could retain collateral securing consumer debt provided he continue to make regular payments thereon); *Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 53 (2d Cir.1997) (holding that § 521(2) does not prevent a bankruptcy court from allowing a debtor who is current on his loan obligations to retain collateral and continue making payments under original loan agreement); *Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249, 250 (5th Cir.1996) (holding that chapter 7 debtors could not retain collateral securing their consumer debt without either redeeming property or reaffirming debt); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1517 (11th Cir.1993) (holding that the plain language of § 521(2) does not permit a Chapter 7 debtor to retain collateral securing a consumer debt without either redeeming the collateral or reaffirming the debt); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345, 347–49 (4th Cir.1992) (holding that retention options in § 521(2)(a) were not exclusive and therefore, chapter 7 debtors who were current in their secured consumer loan installment payments could retain collateral after discharge without redeeming collateral or reaffirming debt); *In re Edwards*, 901 F.2d 1383, 1387 (7th Cir.1990) (holding that § 521 requires a debtor to choose between reaffirmation, redemption or surrender of property abandoned from the estate or exempted from discharge); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir.1989) (holding that bankruptcy court acted within it discretion in permitting debtors to retain collateral without either redeeming collateral or reaffirming debt).

Debtors urge me to follow the Second, Fourth, Ninth and Tenth Circuits which have held that § 521(2)(A) permits a debtor who remains current on his loan payments to elect to retain his collateral and continue making regular payments on the underlying loan documents without redeeming the collateral or reaffirming the debt secured thereby. *In re Parker*, 139 F.3d at 673; *In re Boodrow*, 126 F.3d at 53; *In re Belanger*, 962 F.2d at 347–49; *Lowry*, 882 F.2d at 1547. In so holding, these Courts have interpreted § 11 U.S.C. § 521(2) in one of several ways.

In *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.1998), the Ninth Circuit held that the statute unambiguously contemplates retention options other than those specified in § 521(2)(A). *Id.* at 673. The Court found that the only mandatory act contemplated by the statute is the filing of the debtor's statement of intention, "which the debtor 'shall' file." *Id.* In so finding, the Court stated:

Then, "if applicable,"—that is, if the debtor plans to choose any of the three options listed later in the statute (claiming the property as exempt, redeeming the property, or reaffirming the debt)— the debtor must so specify in the statement of intention. The debtor's other options remain available, as unambiguously stated in § 521(C): "[N]othing in subparagraph [ ](A) ... shall alter the

debtor's or the trustee's rights with regard to such property under this title." *Id.*

Similarly, in *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992), the Fourth Circuit also found § 521(2) to plainly contemplate retention options other than those specifically provided for therein. *Id.* at 347–49. In so holding, the Fourth Circuit focused primarily on the words "if applicable," and interpreted § 521(2)(A) as requiring the debtor to state only his intent to either retain or surrender the property, and then, only if applicable—i.e., only if the debtor also intends to choose one of the options specified therein—also state his intent to exempt the property, redeem it, or reaffirm the debt. *Id.* at 347. Construing the statute in such a manner, the Fourth Circuit embraced the lowers

courts' conclusion that § 521(2) is primarily "a procedural provision requiring notice in order to inform the lien creditor promptly of the debtor's intention," finding such conclusion to be consistent with § 521(C)'s provision that nothing in subparagraphs (A) or (B) shall alter the debtor's rights with respect to the collateral. *Id.* at 347–48 (also finding such conclusion to be supported by 3 COLLIER ON BANKRUPTCY § 521.09A at 521–49 (15th ed.1991) which "construes § 521(2) to 'affect only procedure, and not substantive rights of the debtor'", and stating *"Collier's* interpretation of § 521(2)(A) complies with the canon that courts should give effect, if possible, to every word in a statute. (Citation omitted.) The phrase 'if applicable' is redundant if ... the options given to the debtor are considered to be exclusive.") [5]

---

5. The Fourth Circuit also found its interpretation of § 521(2)(A) to be supported by the Tenth Circuit's decision in *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir.1989) (holding that a bankruptcy court may, in its discretion, permit a debtor to retain collateral without redeeming the collateral or reaffirming the underlying debt). However, it unclear exactly how the Tenth Circuit decided that case. In summarizing its decision, the *Lowry* Court stated:

In sum, although we regard as mandatory the provisions of Code § 521(b) [sic], we do not believe those provisions make redemption or reaffirmation the exclusive means by which a bankruptcy court can allow a debtor to retain secured property. When the state of the evidence indicates neither the debtor nor the creditor would be prejudiced, a bankruptcy court may allow retention conditioned upon performance of the duties of the security agreement as a condition of retention.

*Id.* at 1547. However, the *Lowry* Court also found the requirements of § 521(2) to be mandatory, stating:

To escape the mandatory language of the section, debtors argue the "if applicable" phrase gives a debtor some form of option. We are unpersuaded by that argument because it is inconsistent with the plain mean-

ing of the statute. The words "if appropriate" [sic] are gratuitous and do not affect the mandatory duties prescribed by the statute. The plain English of the section requires every debtor in possession of collateral to make an election whether to retain or relinquish that property. If the debtor decides to retain, the debtor is required to elect whether to redeem or reaffirm. The section also requires the choice be effected within 45 days no matter whether the decision is to retain or relinquish. No other meaning can be gained from the precise terms of the statute, and nothing suggests the debtor can simply elect to retain the property and ignore the other duties required by § 521(2).

*Id.* at 1545, n. 2. The *Lowry* Court then determined the real issue to be: "what are the consequences of the debtors' failure to comply?", *id.* at 1545, finding that although the trustee is vested, pursuant to § 704(3), with ensuring the debtor's compliance with § 521(2), such responsibility is not coupled with any power of enforcement. *Id.* at 1546. Therefore, as noted by the Ninth Circuit in *In re Parker*, it appears that "[t]he Tenth Circuit decided that the plain language of the statute was mandatory, but as the statute gives no power of enforcement, the bankruptcy court, in its discretion, may allow the debtor to keep

Relying, in part, on the Fourth Circuit's decision in *In re Belanger*, the Second Circuit has also interpreted § 521(2) as primarily a procedural provision, holding that nothing in the statute prevents a bankruptcy court from allowing a debtor who is current on his loan obligations to retain his collateral and continue making regular payments thereon. *In re Boodrow*, 126 F.3d at 51–53. However, in contrast to the Fourth and Ninth Circuits, which relied on what they saw as the plain language of § 521(2) to hold that the statute unambiguously contemplates retention options other than those specifically provided for therein, the Second Circuit found § 521(2) to be ambiguous. *Id.* at 50. Specifically, the Court found that "[a]lthough § 521(2)(A) clearly imposes a mandatory obligation on a debtor to state whether he intends to retain or surrender collateral," it is unclear "as to whether Congress intended the options there listed to be exclusive". *Id.* As such, the Court examined both the legislative history and policy behind the statute before agreeing with the Fourth Circuit's conclusion that "§ 521(2) appears to serve primarily a notice function, not necessarily to restrict the substantive options available to a debtor who wishes to retain collateral securing a debt." *Id.* at 51. In so concluding, the Court found that nothing in § 521(2) prevents a bankruptcy court from allowing a debtor who remains current on its loan obligations to retain the collateral and continue to make payments under the original loan agreement, *id.* at 53, reasoning that such an interpretation of the statute was " 'most consistent with balancing the 'fresh start' policy underlying the Code and the rights of the ... secured creditor' ", *In re Boodrow*, 126 F.3d at 51 (citing the lower court's decision).[6]

In contrast to the cases discussed above, the First, Fifth, Seventh and Eleventh Circuits have held that a debtor who wishes to retain collateral securing a consumer debt may only do so by either redeeming the collateral, or reaffirming the debt secured thereby. *See In re Burr*, 160 F.3d at 849; *In re Johnson*, 89 F.3d at 250; *In re Taylor*, 3 F.3d at 1517; *In re Edwards*, 901 F.2d at 1387; *see also In re Boodrow*, 126 F.3d at 57–61 (Shadur, J. dissenting).[7] In so holding, most of these Courts explicitly reject the Fourth Circuit's interpretation of the phrase "if applicable" as permitting a debtor to opt out of the options contained in the statute, and find that the phrase clearly indicates that the options of redemption and reaffirmation are only not "applicable" when the debtor chooses sur-

---

possession of the property and continue to make payments". 139 F.3d at 672.

The *Lowry* decision is confusing in another respect. While the ruling allowed retention without reaffirmation, the Court made the following observation:

We therefore conclude debtors' failure to comply fully with § 521(2) does not give a secured creditor an automatic right to repossess collateral. **The creditor's right to demand redemption or reaffirmation is neither enhanced nor diminished because of that failure.**

882 F.2d at 1546 (emphasis added).

6. In response to arguments that such an interpretation of the statute is precluded by the fact that § 521(2)(B) provides a time limit within which a debtor must perform the elected option, the Second Circuit reasoned that while it is appropriate to set a time limit for action upon the filing of a debtor's statement of intention, such a time limit does not change the nature of the statute "as one aimed at providing notice to creditors of debtor's intentions." *In re Boodrow*, 126 F.3d at 51 (citing lower court's decision). In addition, the Court also noted that courts have the discretion to give the debtor additional time beyond the forty-five day deadline for cause. *Id.*

7. In each of these cases except *In re Johnson*, 89 F.3d 249 (5th Cir.1996), the debtor had remained current on his/her obligations under the underlying loan documents.

render over retention. *See In re Burr,* 160 F.3d at 848; *In re Taylor,* 3 F.3d at 1516; *accord In re Johnson,* 1995 WL 626091 (E.D.La. Oct.20, 1995), *aff'd, Johnson,* 89 F.3d 249 (5th Cir.1996); *see also In re Boodrow,* 126 F.3d at 59 (Shadur, J. dissenting). As the Eleventh Circuit stated in *In re Taylor:*

> Referring to the language preceding the phrase "if applicable," it is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor's surrender of the property; it therefore must apply to a debtor's retention of property. If a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.

3 F.3d at 1516; *accord In re Johnson,* 1995 WL 626091; *see also In re Burr,* 160 F.3d at 848 ("While the point might be obvious, the phrase 'if applicable' makes completely explicit that, in the event of a surrender of collateral, exemption, reaffirmation, and redemption will have no application."); *In re Boodrow,* 126 F.3d at 59 (Shadur, J. dissenting) (finding that the Fourth Circuit's interpretation of the "if applicable" phrase as connoting "the existence of an unexpressed 'fourth option'— demands an inordinately awkward use of the statutory language").

In addition to relying on the plain language of § 521(2)(A) to support their conclusion that § 521(2) prohibits a debtor from exercising any retention option other than redemption or reaffirmation, the First, Seventh and Eleventh Circuits have also relied on that portion of § 521(2)(B) which provides that "within forty-five days ... the debtor shall perform his intention." *See In re Burr,* 160 F.3d at 847; *In re Taylor,* 3 F.3d at 1516; *In re Edwards,* 901 F.2d at 1386. The Courts reason that

by requiring the debtor to perform his intention within forty-five days, the statute clearly contemplates the performance of one of the alternatives outlined therein because a fourth option of simply retaining the collateral and continuing to make regular payments thereon cannot be performed within the forty-five day time limit. *See In re Burr,* 160 F.3d at 847 (reasoning that the retain-and-keep-current option is not capable of being performed within forty-five days of the filing of the statement of intention); *In re Taylor,* 3 F.3d at 1516 ("The plain language of section 521(2)(B) ... indicates that the debtor must perform some act with respect to the property within a specified period of time. An option to retain and keep current is not an act capable of performance within forty-five days ... Additionally, retention is not a duty that the debtor needs to 'perform,' as the debtor already has possession of the property."); *In re Edwards,* 901 F.2d at 1386 ("[T]he statute clearly contemplates performance—within a specified period of time—of the alternatives outlined by it."); *see also In re Boodrow,* 126 F.3d at 59 (Shadur, J. dissenting) ("[T]hat obligation of a debtor to '*perform* his intention' within 45 days after filing the notice of intent is totally at odds with any concept of Congress having contemplated a 'fourth option' involving a continued and extended payout schedule that would run the length of the underlying consumer debt contract ..."). Additionally, these Courts have also relied on policy concerns in concluding that a debtor cannot retain collateral without redeeming or reaffirming. Most of these concerns arise from the fact that permitting a debtor to retain collateral without reaffirming the underlying debt releases the debtor from personal liability on the debt in the event of a post-discharge default. For example, in *In re Edwards,* the Seventh Circuit reasoned that because "[n]o debtor would reaffirm personal liabil-

ity unless required to do so," allowing a debtor to retain collateral without redemption or reaffirmation effectively negates "the voluntarism contemplated by the statute" and enables the debtor to force a new arrangement upon his secured creditors. 901 F.2d at 1386; (citing *In re Bell,* 700 F.2d 1053, 1056–57 (6th Cir.1983) (holding that a debtor who wishes to retain secured property must redeem or reaffirm, and that redemption cannot be accomplished through installment payments)); *see also In re Taylor,* 3 F.3d at 1516 (" 'Allowing retention of the property without reaffirmation or redemption would be tantamount to forcing the creditor into a *de facto* reaffirmation agreement with no recourse against the debtor ...' ") (quoting *In re Horne,* 132 B.R. 661, 663 (Bankr. N.D.Ga.1991)). In addition, the Court also reasoned that allowing debtors to exercise the Fourth Option violates legislative policy by driving up the costs of credit and failing to protect creditors from the risks of quickly depreciating assets. *In re Edwards,* 901 F.2d at 1386 (referring to the intent behind the 1984 Consumer Finance Amendments to the Bankruptcy Code). This is due, not only to the fact that the Fourth Option enables debtors "to improve their position dramatically against secured creditors by relieving them of personal liability," but also to the fact that a debtor who has been relieved of personal liability has little or no incentive to maintain or insure any retained collateral, resulting in a likelihood that "the value of the collateral may fall below the level of the loan, leaving the creditor undersecured." *Id.* As the Eleventh Circuit stated in *In re Taylor,* "[a]llowing a debtor to retain collateral without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." 3 F.3d at 1516.

Like the Seventh and Eleventh Circuits, the First Circuit has also concluded that § 521(2)(A) and (B) do not permit a debtor to retain collateral without redeeming the collateral or reaffirming the debt secured thereby. *In re Burr,* 160 F.3d at 849. However, in reaching this conclusion, the First Circuit also addressed the issue, raised by the lower court, of whether § 521(2)(C) conflicts with such an interpretation of the statute. *Id.* at 848. Upon finding that § 521(2)(A) mandates the election of one of the options specified therein, and that § 521(2)(B) directs performance of the elected option within forty-five days, the lower court questioned whether the unambiguous requirements of § 521(2)(A) and (B) were enforceable in light of § 521(2)(C)'s provision that nothing in subparagraphs (A) and (B) shall alter the debtor's rights with regard to the collateral. *In re Burr,* 218 B.R. 267, 271–72 (1st Cir. BAP 1998), *rev'd, In re Burr,* 160 F.3d 843 (1st Cir.1998). On appeal, the First Circuit rejected such an argument and found that § 521(2)(C) "merely acts to make supreme over the directives of § 521(2)(A) and (B) rights conferred upon the trustee and debtor *elsewhere in the Bankruptcy Code." In re Burr,* 160 F.3d at 848 (emphasizing that § 521(2)(C) provides that nothing contained in § 521(A) or (B) shall alter the debtor/trustee's rights ... *"under this title"*). Finding no contradiction between § 521(2)(C) and the voluntary nature of redemption and reaffirmation, the Court stated:

> We do not doubt that redemption is beyond the means of most chapter 7 debtors, and that chapter 7 debtors wishing to retain consumer goods on which they owe money will, as a practical matter, be compelled to enter into reaffirmation agreements with their secured creditors. Nor do we doubt that

some oversecured creditors may use their superior bargaining power to attempt to impose additional, creditor-friendly terms in any new agreement. But strictly speaking, debtors are never "forced" to enter into reaffirmation agreements; they can always surrender the property and be discharged of the underlying debt. Or, rather than filing for chapter 7 protection, debtors can petition to reorganize under chapter 13 and take advantage of the cram down provisions available to chapter 13 petitioners. (Citation omitted.) Again, we emphasize that a chapter 7 discharge is a benefit that comes with certain costs.

*Id.*

I am persuaded that the position taken by the First, Fifth, Seventh, and Eleventh Circuits, as well as Judge Shadur in his dissenting opinion in *In re Boodrow,* is the correct one. Therefore, I find that § 521(2) does not permit a Fourth Option, i.e., a debtor retaining collateral securing a consumer debt, provided that such debtor continues to make regular payments in accordance with the underlying loan documents, without reaffirming the debt secured thereby.

In reaching my conclusion, I find a number of points to be particularly persuasive on the issue. First, I agree that such an interpretation of § 521(2) is supported by the fact that § 521(2)(B) expressly provides that the debtor "shall perform" the elected option "within forty-five days." 11 U.S.C. § 521(2)(B); *see In re Burr,* 160 F.3d at 847; *Taylor,* 3 F.3d at 1516; *In re Edwards,* 901 F.2d at 1386; *In re Boodrow,* 126 F.3d at 59 (Shadur, J. dissenting). The alleged Fourth Option—to simply retain collateral and continue to make regular payments in accordance with the underlying loan documents—is not an option that is capable of being performed within forty-five days. As such, it is clearly not an option contemplated by the statute.[8]

Second, I also agree that by allowing a debtor to exercise the Fourth Option, the court would enable the debtor to receive a discharge of his/her personal liability on a debt secured by the subject collateral in the event of a post-discharge default, thereby converting a recourse debt into a non-recourse obligation. Such a *de facto* reaffirmation, on terms not agreed to by the secured creditor, is clearly not contemplated by the provisions of § 524(c) which spells out the procedures and conditions

**8.** I find the Second Circuit's response to this argument, *see* discussion *supra,* n. 6, to be unpersuasive. First, the fact that one of the purposes of the statute is to provide notice of the debtor's intention to the debtor creditor's does not negate the *express* requirement in § 521(2)(B) that such intention be performed within forty-five days. In addition, although it is true that the Court may extend the forty-five day time period provided for in § 521(2)(B), it may only do so for cause. As such, § 521(2)(B) contemplates that upon electing to retain collateral, and specifying whether such retention will be achieved by redemption or reaffirmation, the debtor may increase the time within which to perform the elected option only upon demonstrating cause as to why the elected option—redemption or reaffirmation—cannot be performed within

the forty-five day period (i.e., "there are questions about the debtor's exemptions, the trustee's intention to abandon property, or dischargeability," 3 COLLIER ON BANKRUPTCY ¶ 521.10[4] ). I doubt that the simple fact that a debtor wishes to retain collateral and continue making payments in accordance with the underlying loan documents could be sufficient, in and of itself, to constitute "cause" to extend the deadline under the statute. In addition, even if such a desire could, alone, constitute "cause", in situations where the payment period under the loan documents continues for a year or more, the Court would have to grant an equally lengthy extension period to enable the debtor to perform in accordance with § 521(2)(B). I do not believe such a result is contemplated by the statute.

for effecting a reaffirmation, nor does it find support in any other section of the Code. Section 521(2)(C) provides that nothing in § 521(2)(A) or (B) "shall alter the debtor's or the trustee's rights *with regard to such property under this title*" (emphasis added). The best example of such a right is the automatic stay of § 362. However, § 521(2)(C) does not say that the debtor has the right under the Code to amend the debtor-creditor contract in a fundamental way. I find no place in the Code where a Chapter 7 debtor is given the right to unilaterally alter the debtor-creditor contract to effect, in the words of the *Boodrow* Court, a "reinstatement," i.e., a retention of the collateral, a continuation of payments, but "albeit a somewhat different contract because any personal obligation has been discharged." 126 F.3d at 49, n. 6.

Why would any debtor elect reaffirmation if the Fourth Option were available? The First Circuit in *In re Burr* endorsed Judge Shadur's dissenting remarks in *In re Boodrow* in answer to this question:

Along these same lines, Judge Shadur also pointed out that it would be the rare debtor indeed who would elect reaffirmation or redemption over the unstated fourth option, which neither requires a large lump sum payment (redemption) nor resuscitates personal liability for the underlying debt post-discharge (reaffirmation). *See [In re Boodrow,* 126 F.3d] at 60. Why, then, would Congress specify the seldom-to-be-used devices of redemption and reaffirmation, but leave unspecified the opinion that would be almost universally employed? *See id.* Judge Shadur concluded by noting that, in the context of chapter 13 of the Bankruptcy Code, Congress explicitly provided for a "cram down" provision by which a debtor may retain property over the objection of a secured creditor by keeping current on his or her payments. *See*

*id.* at 60–61. This, of course, strongly suggests that it would be improper to infer congressional approval of a similar "cram down" option in the present context: "[W]hen Congress wants to provide for a 'cramdown' that enables a debtor to keep property over the objection of a secured creditor, it knows full well how to do so." *Id.* at 60.

160 F.3d at 847.

## CONCLUSION

For the reasons discussed above, DSP's motion (Doc. # 4) to compel Debtors to Surrender, Redeem or Reaffirm is granted.